**ROSE ACRE FARMS, INC.,**
**Defendant–Appellant,**

v.

**GREEMANN REAL ESTATE,**
**Plaintiff–Appellee.**

No. 88A01–8704–CV–00089.

Court of Appeals of Indiana,
First District.

Dec. 23, 1987.

Rehearing Denied Feb. 8, 1988.

Corinne R. Finnerty, McConnell, Finnerty & Roche, North Vernon, for defendant-appellant.

Richard G. Bolin, Susan L. Orth, Ward, Bolin & Stein, New Albany, for plaintiff-appellee.

RATLIFF, Chief Judge.

## STATEMENT OF THE CASE

Rose Acre Farms, Inc. appeals from the Washington Circuit Court a judgment entered in favor of Greemann Real Estate for a locating commission. We reverse and remand with instructions.

## FACTS

Greemann Real Estate (Greemann) is a sole proprietorship operated by Maxine Greemann. Rose Acre Farms, Inc. (Rose Acre) is a corporation engaged in the production and sale of table grade eggs. In 1983, Rose Acre decided to expand its operations and sought to acquire fifty to sixty (50–60) acres of land to build an egg producing facility. Rose Acre wanted the land to be located near the Chicago egg market, either in northern Indiana or Illinois. Rose Acre entered into an "Exclusive Retainer Agreement to Locate Real Property" with Greemann. O. Eugene Crone, a licensed real estate broker, acted as Greemann's agent under the Rose Acre agreement. The agreement provided that Rose Acre would pay Greemann a six percent (6%) commission for locating and negotiating the purchase of property by Rose Acre.

In April of 1983, approximately one (1) month after Rose Acre entered into the locating agreement with Greemann, a second agreement was entered into between Rose Acre and Crone, Greemann's agent. Rose Acre agreed to pay Crone an hourly rate to act as a consultant on matters not specifically within the terms of the locating agreement. Specifically, Crone agreed to provide several additional services in connection with locating suitable property, including: (1) obtaining tax abatements, (2) negotiating for electrical service between two rural electric companies, (3) obtaining necessary zoning changes, (4) assisting in the obtainment of financing through industrial revenue bonds, (5) dealing with the stream pollution problems, (6) preparing grain studies, and (7) renegotiating Rose Acre's existing financing in an amount of Eleven Million Dollars ($11,000,000).

Crone located three (3) potential properties for Rose Acre. Rose Acre submitted bids and eventually purchased property known as the Hageman Farm for Four Hundred Two Thousand Four Hundred and Eighty Dollars ($402,480). The closing occurred not later than September 1, 1983. However, before the closing occurred, Rose Acre had a disagreement with and fired Crone. Rose Acre sent Crone a check for his consulting services in the amount of Five Thousand One Hundred Thirty–Seven Dollars and Eighty–Three Cents ($5,137.83). Rose Acre never paid Greemann under the locating agreement.

On December 8, 1983, Greemann sent a statement to Rose Acre in the amount of Twenty–Four Thousand One Hundred Forty–Eight Dollars and Eighty Cents ($24,148.80) for the six percent (6%) locating commission. Rose Acre refused to pay the statement. This lawsuit followed on February 23, 1984. The case was tried before the court without a jury on February 24, 1986. Rose Acre requested, and the trial court entered Special Findings of Fact and Conclusions of Law on June 27, 1986. The trial court entered judgment in favor of Greemann and denied Rose Acre's motion for involuntary dismissal. Rose Acre appealed.

## ISSUE

While Rose Acre presents eight (8) issues for review, the following is dispositive:

Whether the trial court erred by finding that Greemann met the requirements of Indiana Code section 25–34.1–6–2.[1]

## DISCUSSION AND DECISION

■ Rose Acre argues that the trial court erred by finding that Greemann alleged and proved licensure, as required by Ind.Code § 25–34.1–6–2, which provides in part as follows:

"(a) A person who:

(1) Performs the acts of a salesperson without a salesperson license;

(2) Performs the acts of a broker without a broker license; or

(3) Conducts, or solicits or accepts enrollment of students for, a course as prescribed in IC 25–34.1–3 [25–34.1–3–1—25–34.1–3–7] without course approval; commits a class B infraction. Upon conviction for an offense under this section, the court shall add to any fine imposed, the amount of any fee or other compensation earned in the commission of the offense. Each transaction constitutes a separate offense.

"(b) In all actions for the collection of a fee or other compensation for performing acts regulated by this article, it must be alleged and proved that, at the time the cause of action arose, the party seeking relief was not in violation of this section."

On appeal, this court will not reverse a trial court's judgment entered pursuant to Indiana Rules of Procedure, Trial Rule 52, unless the findings of fact, conclusions of law or judgment are clearly erroneous (*i.e.*, when a review of all the evidence leaves a firm conviction that the trial court erred). *Chase Manhattan Bank v. Lake Tire Co., Inc.* (1986), Ind.App., 496 N.E.2d 129, 131; *Lafayette Realty Corp. v. Vonnegut's, Inc.* (1984), Ind.App., 458 N.E.2d 689, 692; *Baker v. Compton* (1983), Ind.App., 455 N.E.2d 382, 385. A judgment is clearly erroneous when unsupported by the conclusions of law, and the conclusions of law are clearly erroneous when unsupported by the

findings of fact. *Lafayette Realty*, at 692; *Baker*, at 385. The findings of fact are clearly erroneous when the record lacks facts or reasonable inferences to support them. *Lafayette Realty*, at 692; *Baker*, at 386. However, in determining whether the findings are clearly erroneous, this court neither reweighs evidence nor judges witness credibility; rather, this court will consider only that evidence in the record and the reasonable inferences to be drawn therefrom that support the findings. *Lafayette Realty*, at 692; *Baker*, at 385–86.

■ In the present case, the trial court's judgment is clearly erroneous. The trial court's findings of fact state, in part, as follows:

"1. Plaintiff Greemann Real Estate, at all times relevant hereto, was a licensed real estate brokerage company in the State of Indiana, and O. Eugene Crone (hereinafter referred to as 'Gene Crone') was a licensed real estate broker in the State of Indiana, acting as the agent of Greemann Real Estate."

Record at 164. Although the evidence established that Crone was a licensed real estate broker, the evidence did not establish that Greemann was a licensed real estate broker. Allegation and proof of compliance with Indiana's licensing statute was a substantive statutory element of Greemann's suit for collection of a commission. Ind.Code § 25–34.1–6–2(b); *Hoffman v. Dunn* (1986), Ind.App., 496 N.E.2d 818, 822; *Sutton v. Roth, Wehrly, Heiny, Inc.* (1981), Ind.App., 418 N.E.2d 229, 231–32; *Voelkel v. Berry* (1966), 139 Ind.App. 267, 270–71, 218 N.E.2d 924, 926. Absent admission by Rose Acre or limitation of the issues for trial by the trial court, Greemann bore the burden of proving compliance with Indiana's licensing statute. *Marotta v. Iroquois Realty Co.* (1980), Ind.App., 412 N.E.2d 797, 798–99. Furthermore, Greemann could not rely on Crone's license to support compliance with the statute. Since the facts and inferences in the record did

1. Greemann argues that Rose Acre waived this issue by not making a second motion for involuntary dismissal under Indiana Rules of Procedure, Trial Rule 41(B) at the close of all the evidence. However, Rose Acre was not required to make a second motion for judgment on the evidence to challenge the sufficiency of the evidence to support the findings and judgment, and the issue was preserved properly for appeal.

not establish that Greemann was licensed in compliance with the statute, and since Rose Acre did not admit this issue, a substantive element of Greemann's cause of action was lacking. Therefore, the trial court's finding was unsupported by the evidence and the judgment was clearly erroneous.

■ Greemann argues that proof of licensure was not required. Greemann alleges that Rose Acre bore the burden of alleging and proving lack of licensure as an affirmative defense, and relies on *Marotta v. Iroquois Realty Co.* (1980), Ind.App., 412 N.E.2d 797 to support this proposition. Greemann further asserts that Rose Acre's failure to address the issue in their answer and at trial waived the issue. Greemann is mistaken and misinterprets *Marotta.*

In *Marotta,* Iroquois Realty sued for and obtained a judgment for a real estate broker commission. *Marotta,* at 798. Marotta appealed the judgment and argued that Iroquois Realty failed to comply with Indiana Code section 25–34–1–9,[2] by not offering evidence at trial to establish that it was a duly licensed broker. *Id.* The court of appeals rejected Marotta's argument, because Marotta had admitted in its answer, that Iroquois Realty was licensed and because the pretrial order had limited the issues for trial. *Id.* at 798–99. Thus, Iroquois Realty was not required to present proof of compliance at trial. *Id.* at 799. The court went on to reject Marotta's claim that proof of statutory compliance could not be admitted or waived from the issues for trial. *Id.*

Greemann misinterpreted *Marotta* to stand for the proposition that compliance with Ind.Code § 25–34.1–6–2 is an affirmative defense which can be waived. However, Marotta stands only for the proposition that a plaintiff's burden of proof as to statutory compliance and licensure may be eliminated from the issues to be proved at trial by admission or pretrial order. *Marotta* does not change the burden of proving statutory compliance or amend Ind.Code § 25–34.1–6–2(b) into an affirmative defense. Greemann's mistaken interpreta-

tion appears to arise from the *Marotta* court's reference to other jurisdictions. However, the *Marotta* court referred to these jurisdictions for the general proposition that the issue of statutory compliance could be eliminated from the trial by admission. The court did not decide that the issue of statutory compliance was waivable as an affirmative defense. To the extent that *Marotta* and the cases cited therein can be interpreted as holding the issue of statutory compliance is an affirmative defense, we reject those interpretations.

■ This court also rejects Greemann's argument that Ind.Code § 25–34.1–6–2 is invalid and in derrogation of the Indiana Rules of Procedure. Greemann suggests first that Ind.Code § 25–34.1–6–2 contravenes Trial Rule 9(A) which provides a party's capacity to sue does not have to be pleaded and that the burden of proof and pleading shall be on the person asserting lack of capacity. However, compliance with Indiana's licensing statute does not merely involve a procedural issue of the party's capacity to sue. Rather, the statute is a substantive limit on the plaintiff's ability to collect for real estate brokerage services, and proof of compliance with the statute goes to the merits of a cause of action for collection of a commission. *Hoffman,* at 822; *Marotta,* at 799–800. As stated in *Hoffman,* "[w]hen a court determines an entity has failed to comply with statutory licensing requirements, it is a determination on the merits rather than one rendered on mere matters of form, practice, procedure, technical or dilatory objections." *Hoffman,* at 822.

Greemann argues also that the statute is in conflict with both Indiana Rules of Procedure, Trial Rule 8(C) and Trial Rule 9(C). Greemann again is mistaken. Trial Rule 8(C) deals with the pleading and burden of proof for affirmative defenses. Since proof of statutory compliance is an element of the plaintiff's case and not an affirmative defense, Trial Rule 8(C) is not implicated or in conflict with the statute. Trial Rule 9(C) states that a denial of perform-

2. The current provision is located at Indiana    Code section 25–34.1–6–2.

ance must be made specifically and with particularity. Again, we fail to recognize any conflict between the statute and T.R. 9(C).

Greemann failed to comply with Ind.Code § 25–34.1–6–2(b). The evidence in the record failed to establish either factually or inferentially that Greemann was a licensed real estate broker. Thus, the trial court's finding of fact that Greemann was licensed, and judgment in favor of Greemann were clearly erroneous. Therefore, the trial court's judgment is reversed and remanded to the trial court with instructions to enter judgment in favor of Rose Acre.

Reversed and remanded with instructions.

NEAL and SULLIVAN, JJ., concur.