## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jul 29 2015, 9:12 am

CLERK
of the supreme court,
court of appeals and
tax court

| ATTORNEY FOR APPELLANT | ATTORNEY FOR APPELLEE |
|---|---|
| Edward A. McGlone | Caitlin M. Miller |
| Terre Haute, Indiana | Hunt, Hassler, Lorenz & Kondras, LLP |
| | Terre Haute, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Billy L. Haymaker, | July 29, 2015 |
| *Appellant-Respondent,* | Court of Appeals Case No. 61A01-1411-DR-495 |
| *v.* | Appeal from the Parke Circuit Court The Honorable Samuel A. Swaim, Judge |
| Victoria L. Haymaker, | Trial Court Cause No. 61C01-1304-DR-152 |
| *Appellee-Petitioner.* | |

**Bradford, Judge.**

# Case Summary

[1]     Appellant-Respondent Billy Haymaker ("Husband") and Appellee-Petitioner Victoria Haymaker ("Wife") were married in 1980 and separated in 2013 upon Wife's filing of a dissolution petition. Between 1997 and 2000, Wife's mother

had conveyed sixty-five acres of farmland to Wife and Wife's two siblings as joint tenants with rights of survivorship ("the Farm"). Wife had also opened a bank account with Old National Bank ("the Account") into which she deposited her share of revenue from the Farm, which is operated by her brother.

[2] As part of the dissolution proceeding, the marital residence was appraised by three persons, two of whom appraised the property at $190,000 and one at $230,000. Wife and Husband also submitted appraisals of certain heavy equipment of Husband's with Wife's appraisal of its value being significantly higher than that of Husband's. After a hearing, the trial court determined, *inter alia*, that (1) Wife's gift of her portion of the Farm and the Account warranted an uneven division of the marital estate because those assets remained in her name and were not comingled with Husband's assets, (2) the value of the marital residence was $230,000, and (3) the value of Husband's heavy equipment was the mean of all of the appraisals that were performed.

[3] Husband contends that (1) the trial court abused its discretion in concluding that the Farm and the Account warranted a deviation from the presumptive equal split of the marital estate, (2) the trial court abused its discretion in valuing Wife's interest in the Farm, (3) the trial court abused its discretion valuing the marital residence, and (4) the trial court abused its discretion in valuing Husband's heavy equipment. We conclude that the trial court did not abuse its discretion in, essentially, assigning the Farm to Wife but did abuse its discretion in assigning the Account to her. We further conclude the trial court

did not abuse its discretion in valuing the marital estate or Husband's heavy equipment. We affirm in part, reverse in part, and remand with instructions.

# Facts and Procedural History

[4] Husband and Wife were married on May 17, 1980. From 1997 to 2000, Wife's mother executed four warrantee deeds for the "Farm," a 325-acre property held by Wife, Wife's brother Joseph Fessant, and Wife's sister Mary Beth Walls as joint tenants with rights of survivorship. Husband was aware of the Farm but never requested that it be retitled to add his name. At some point, Wife opened the Account, into which she deposited her share of the Farm's income. The Account was used for whatever family needs arose, "[w]hether it be furniture or something the children needed." Tr. p. 220. The income from the Farm was reported on the joint tax returns filed by the parties.

[5] On April 15, 2013, Wife filed a petition for dissolution of her marriage to Husband. On May 21, the trial court held a hearing on the dissolution petition. At the hearing, the evidence included three appraisals of the marital residence and four appraisals of certain heavy equipment of Husband's, three performed on his behalf and one on Wife's. Brian Conley appraised the Farm at $325,000, but did not take into account that it was currently a joint tenancy with rights of survivorship. Carl Miller, III, testified that it would be difficult to market a one-third interest in a joint tenancy with rights of survivorship. Miller further testified that the interests in the Farm would have to be separated in order to be marketable, which could be accomplished by a partition suit. Wife and Fessant

both testified that they wished to give their children their interest in the Farm and intended to convert title to the Farm to a tenancy in common. As of the date of the hearing, however, Wife and Walls had not spoken in seventeen years.

[6] On July 3, 2014, the trial court issued its dissolution decree, which provides, in part, as follows:

## DECREE OF DISSOLUTION OF MARRIAGE

This cause came on for final hearing the 21st day of May, 2014. Petitioner, Victoria L. Haymaker (hereinafter "Wife"), appeared in person and by counsel, Teri M. Lorenz. Respondent, Billy L. Haymaker (hereinafter "Husband"), appeared in person and by counsel, Edward A. McGlone. Witnesses were sworn and evidence was heard. The Court, having taken this matter under advisement, now enters the following Decree of Dissolution, dissolving the parties' marriage and dividing the assets and debts of the marriage.

1. The parties were married on May 17, 1980. The parties separated on April 5, 2013.

….

6. Wife is an employee of the Vigo County School Corporation and earned $30,786 in 2013. Husband is an employee of Novelis and earned $119,046 in 2013. Therefore, Husband's annual income is nearly four (4) times more than Wife's annual income. However, Husband is close to retirement.

….

11. During the marriage, Wife received a gift of a 1/3 interest in 65 acres of farm real estate, in Vigo County, IN, from her mother, following the death of her father in a farm accident. The co-owners of said farm are Wife's brother

and sister. The real estate is titled to these three (3) siblings as joint tenants with right of survivorship. Wife is 3 years older than her brother, Joseph Fessant, and 15 years older than her sister, Mary Beth Walls. Mortality tables indicate Wife may survive her brother because females live longer than males, however, such tables would also indicate that Mary Beth Walls will survive both her siblings and as the youngest surviving joint tenant with right of survivorship, would end up owning the fees simple in the 65 acres. The alternative to the last surviving sibling owning the fee simple in the real estate would be for the three (3) owners to agree to divide the real estate, in kind; to agree to sell the real estate and divide the proceeds among them; or one or more of the siblings filing a lawsuit to partition the real estate.

12. The fact that Wife and her younger sister have not spoken to each other for years indicates that co-operation to divide or sell the real estate will be unlikely and having to file a partition action will be likely.

13. The fee simple interest in the 65 acre farm was appraised by Brian Conley during the pendency of this matter for $325,000.

14. The costs to Wife of partitioning her interest in the 65 acre farm, according to Carl N. ("Chip") Miller, III, are:

a. Litigation costs including attorney fees: $20,000

b. Real estate appraisal fee: $2,000

c. Realtor's commission at 6% $6,500

Total: $28,500

These expenses would, therefore, reduce the value of Wife's fractional 1/3 interest in the real estate from $108,333 to $79,833. **In any event, the value of this asset is somewhat irrelevant. Regardless of the value, it is Wife's asset alone. She inherited it and Husband has contributed nothing toward this asset. The Court would**

**deviate from the 50/50 presumption in favor of the Wife by any amount placed as the value of this asset. However, its value and income do somewhat counterbalance Husband's superior income earning ability.**

15. During the marriage Wife maintained Old National Bank Account #0302, into which she deposited her net farm income after payment of farm expenses such as Indiana real property taxes.

....

19. The parties built the home at 10660 S. Rukes Road and invested approximately $350,000 in its construction.

20. There were four (4) appraisals on the marital residence. Wife had the real estate appraised by Johnny Swalls ($190,000) and by Chip Miller ($230,000). Both of these appraisals were market-analysis appraisals. Wife also had a market assessment performed by Becki Busiere of Remax Real Estate who inspected the real estate, inside and out, and determined the fair market value of the real estate to be $230,000 to $235,000. Husband had the real estate appraised by Cindy Steiner at $190,000; however, Ms. Steiner looked at the home from the road, only, and did not view the interior of the home. Ms. Steiner's appraisal was a "lender's appraisal".

21. Ms. Steiner did not inspect the interior of the residence until after preparation of her appraisal report and understated the square footage of the real estate by 258 square feet and determined a value per square foot of the real estate at $114.46. Chip Miller opined, that had Steiner used the correct square footage, her value of the real estate would have increased by $29,530, bringing her value to $219,530. Ms. Steiner acknowledged at the final hearing that she had underestimated the square footage of the residence but testified that her correction of that error

would not increase her opinion of the value of the real estate.

22. Appraiser, Johnny Swalls adjusted his Comparable #1 as if it had a larger basement than the parties= [sic] basement, when, in fact, it had no basement. Correcting this error increased the value of Comparable #1 by $25,460. Swalls corrected this error in his appraisal after it was brought to his attention by Chip Miller; however he did not increase the value of the real estate as a result of this correction.

23. Neither Steiner nor Swalls seemed to make any adjustment on their comparables for the fact that the basement in the parties' home is fully finished and includes two (2) bedrooms and a full bath. Chip Miller believed that the value of this improvement, as compared to an unfinished basement, was $29,000. Had Swalls or Steiner adjusted their values, accordingly, for the fully finished basement at the marital residence, which provides substantial additional living space, their values of the real estate would have exceeded the value of the real estate determined by Chip Miller.

24. Chip Miller testified that shortly before the parties' final hearing, a home comparable to and in close proximity to the parties' Parke County real estate had sold for $250,000. He testified that had this comparable been available at the time of his appraisal, he would have relied heavily on it. He testified that this recent comparable confirmed his value of the parties' real estate at $230,000.

25. The Court determines that the value of the residence, at separation, was $230,000. This is a beautiful home for which the parties should be proud. It would appear to the Court that $230,000 is actually a very reasonable price for such a home.

26. The date of separation balance of the Wells Fargo mortgage against the real estate was $127,806, leaving equity in the real estate of $82,194.

27. Each party shall be confirmed in the continued ownership of all household goods, furnishings, personal effects, tools and heavy equipment in his/her possession, same having been allocated between the parties during the pendency of this matter.

28. There were also four (4) appraisals of some part or all of the parties' personal property.

    a. Wife commissioned the appraisal by Johnny Swalls of all household goods and furnishings, tools, equipment and heavy machinery. The value of such property as determined by Swalls was $48,331.50. Swalls appraised the heavy equipment at $30,100.

    b. Husband commissioned three other appraisals of some part or all of his heavy equipment, only. The value of some part or all of the heavy equipment determined by Husband's appraisers were:

       David Hayes:             $11,825

       Jim Maier ("Diamond")    $13,800

       Wright Implement         $11,659

29. The Court finds Wife's approach in averaging the 2 to 4 appraised values of each piece of heavy equipment to determine its mean value to be reasonable. Therefore, the adjusted value of the parties' personal property is $35,899, of which Wife received property valued at $5,835 and Husband received property valued at $30,004.

30. The Court accepts Husband's argument that the 50/50 presumption should be rebutted because only 33/35ths of his Novelis Pension Plan was accrued during the marriage. The Court will award Husband with 53% of this Plan.

31. The Court finds that the assets which comprise the marital estate and the value thereof, at separation, are as follows:

| Asset | Titling | FMV | Debt | Marital Pot Value |
|---|---|---|---|---|
| Parties' Pre-Marital Gifted Assets | | | | |

....

| Asset | Titling | FMV | Debt | Marital Pot Value |
|---|---|---|---|---|
| Wife's *gifted* 1/3 interest as joint tenants with right of survivorship with W's siblings in 65 acres of farmland in Sanford (Vigo County), Indiana. Appraised by Brian Connelly for $325,000 reduced by costs of partition action. $325,000 ÷ 3 = $108,333 - $28,500 = $79,833 | w | 79,833 | | 79,833 |
| ONB Savings (Farm Account) #0302 | w | 3,540 | | 3,540 |

....

| Asset | Titling | FMV | Debt | Marital Pot Value |
|---|---|---|---|---|
| Additional Assets Acquired by Joint Effort of Parties | | | | |
| Real Estate | | | | |
| Marital residence as 10660 S. Rukes Road, Rosedale (Parke County), Indiana, including 6 acres; subject to Wells Fargo mortgage #0359 ($127,806). Value per market analysis appraisal of Carl N. Miller, III. | jt | 230,000 | 127,806 | 102,194 |
| Personal Property | | | | |

| | | | | |
|---|---|---|---|---|
| Household goods and furnishings; value per appraisal by Johnny Swalls with heavy equipment valued at mean value determined by Swalls and 3 other appraisers of such equipment. | jt | 35,899 | | 35,899 |

….

| | | | | |
|---|---|---|---|---|
| Total Estate | | 2,138,827 | 127,806 | 2,011,021 |

32. The presumption of an equal division of assets between the parties under I.C. 31-15-7-5 is rebutted and the Court determines that Wife is entitled to more than fifty percent (50%) of the marital estate because of the value of her gifted assets which remained in Wife's name, alone, during the marriage and which were not commingled with Husband. Wife also argues the court should rebut the presumption because of Wife's inferior earning ability and her inferior economic circumstances with respect to Social Security retirement benefits and the increased cost of her medical insurance. These are valid concerns, but Husband is close to retirement and Wife has been keeping her own income out of marriage for a significant amount of time. While this may not rise to "dissipation" it is an economic circumstance the Court has considered. In addition, Wife will end up with her acreage in Vigo County. The Court finds that each of the parties contributed an equal amount of money to the completion of the home Husband was building at the time of the marriage and therefore brought an equal value of assets into the marriage, and that neither party dissipated assets during the marriage. While each party alleged that the other party had dissipated assets, the parties would not have accumulated the marital estate that existed at separation if there had been any significant dissipation of assets. The Court intends to equally divide the estate, except the premarital assets and gifts. The additional amount awarded to Wife ($45,215.38) roughly

represents the additional amounts Wife has as a gift or premarital item.

….

36.    Husband shall refinance the Wells Fargo mortgage secured by a lien against the marital residence and pay Wife her $51,097 equity in the real estate within 60 days of this Order. Wife shall quit claim to Husband her interest in the real estate in the context of his refinancing, under a Quit Claim Deed prepared by Husband's attorney. Husband shall continue to pay and hold Wife harmless against all expenses associated with the former marital residence, pending his refinancing.

Appellant's App. pp. 18-23, 25, 28.

On August 1, Husband filed a motion to correct error. On October 22, 2014, the trial court issued its order to correct error, revaluing some assets that are not at issue in this appeal and redividing the marital estate accordingly.

# Discussion and Decision

When we review a case in which the trial court has made requested findings of fact and conclusions of law, we will not set aside the court's judgment unless it is clearly erroneous. *Rose Acre Farms, Inc. v. Greemann Real Estate* (1987), Ind. App., 516 N.E.2d 1095, 1097, *trans. denied*. A judgment is clearly erroneous when unsupported by the findings of fact and conclusions thereon. Findings of fact are clearly erroneous when the record lacks any facts or reasonable inferences to support them. *Donavan v. Ivy Knoll Apartments Partnership* (1989), Ind. App., 537 N.E.2d 47, 50. In determining whether the findings and judgment are clearly erroneous, we will neither reweigh the evidence nor judge witness credibility, but we will consider only the evidence and reasonable inferences therefrom which support the judgment. *Agrarian Grain Co. v. Meeker* (1988), Ind. App., 526

N.E.2d 1189, 1191. A judgment is contrary to law if it is contrary to the trial court's special findings. *Id*.

*DeHaan v. DeHaan*, 572 N.E.2d 1315, 1320 (Ind. Ct. App. 1991), *trans. denied*.

# I. Whether the Trial Court Abused its Discretion in Dividing the Marital Estate Unequally

[9] Indiana Code section 31-15-7-5 provides as follows:

> The court shall presume that an equal division of the marital property between the parties is just and reasonable. However, this presumption may be rebutted by a party who presents relevant evidence, including evidence concerning the following factors, that an equal division would not be just and reasonable:
>> (1) The contribution of each spouse to the acquisition of the property, regardless of whether the contribution was income producing.
>> (2) The extent to which the property was acquired by each spouse:
>>> (A) before the marriage; or
>>> (B) through inheritance or gift.
>> (3) The economic circumstances of each spouse at the time the disposition of the property is to become effective, including the desirability of awarding the family residence or the right to dwell in the family residence for such periods as the court considers just to the spouse having custody of any children.
>> (4) The conduct of the parties during the marriage as related to the disposition or dissipation of their property.
>> (5) The earnings or earning ability of the parties as related to:
>>> (A) a final division of property; and
>>> (B) a final determination of the property rights of the parties.

[10] "Subject to the statutory presumption that an equal distribution of marital property is just and reasonable, the disposition of marital assets is committed to

the sound discretion of the trial court." *Augspurger v. Hudson*, 802 N.E.2d 503, 512 (Ind. Ct. App. 2004).

> An abuse of discretion occurs if the trial court's decision is clearly against the logic and effect of the facts and circumstances, or the reasonable, probable, and actual deductions to be drawn therefrom. An abuse of discretion also occurs when the trial court misinterprets the law or disregards evidence of factors listed in the controlling statute. The presumption that a dissolution court correctly followed the law and made all the proper considerations in crafting its property distribution is one of the strongest presumptions applicable to our consideration on appeal. Thus, we will reverse a property distribution only if there is no rational basis for the award and, although the circumstances may have justified a different property distribution, we may not substitute our judgment for that of the dissolution court.

*Id*. (citations, quotation marks, and brackets omitted).

[11] Husband contends that the trial court abused its discretion in departing from the statutory presumption of an equal division of marital assets. Specifically, Husband contends that Wife failed to establish that her interest in the Farm and the Account were sufficient to rebut the presumption of an equal split.

[12] We reject Husband's argument so far as the Farm is concerned. As previously mentioned, the presumption of equal division may be rebutted by evidence regarding the extent to which property was acquired through inheritance or gift. *See* Ind. Code § 31-15-7-5(2)(B). Here, Wife presented evidence that her interest in the Farm was deeded to her and her alone and no attempt was ever made to retitle Wife's interest to add Husband, despite his full knowledge of the Farm.

Fessant testified that he, Wife, and Walls's great-grandfather owned the Farm originally and that Fessant's goal was to have his grandchildren have an interest in the Farm. Wife testified that she wanted the Farm "for all [her] kids" and that her parents' main objective for the Farm was that it stay in the family. Tr. p. 159. In light of the evidence that no attempt was made to incorporate the Farm into the marital estate and that Wife and Wife's family intended it to remain the "family farm," we conclude that the trial court did not abuse its discretion in departing from the presumption of an equal division of the marital estate.[1]

[13] As for the Account, we reach a different conclusion. 31-15-7-5(4) provides that, in deciding whether to depart from the presumption of equal division of the marital estate, the trial court may consider "[t]he conduct of the parties during the marriage as related to the disposition or dissipation of their property." Wife testified that Farm income was reported on the parties' joint tax return each year and that the income was used "not just for [her], for whatever was necessary[,]" including "furniture or something the children needed." Tr. p. 220. Wife also testified that Husband had access to the Account. By Wife's admission, the funds in the Account were commingled with the marital estate and used for marital expenses. So, while the trial court did not abuse its

---

[1] Husband also contends that the trial court erred in concluding that the value of Wife's share in the Farm was to be reduced by the cost of a partition suit when it was unclear that such a suit would be necessary. Because we conclude that the trial court did not abuse its discretion in assigning the interest in the Farm entirely to Wife, however, we not address arguments concerning its specific value.

discretion in concluding that Wife's receipt of the Farm itself justified an unequal division of the marital estate, we conclude that the trial court abused its discretion by essentially taking the Account out of the marital estate.

## II. Whether the Trial Court Abused its Discretion in Assigning Value to Certain Marital Assets

### A. The Marital Residence

[14] Husband contends that the trial court abused its discretion in assigning a value of $230,000 to the marital residence. Wife had two appraisals performed on the residence, by Swalls and Miller, who valued it at $190,000 and $230,000, respectively. Husband had Cindy Steiner appraise the property and she valued it at $190,000. In addition, Wife put into evidence an opinion from Becky Busiere that the residence was worth from $220,000-$235,000, although Busiere specifically indicated that her opinion letter was "not an appraisal and is not intended for that use." Ex. 7. Only Miller and Steiner testified at the final dissolution hearing.

[15] Husband argues that Miller's upward adjustment for the residence's finished basement, $48,000 as opposed to Swalls's $19,000 adjustment and Steiner's $20,000 adjustment, was excessive. Miller justified his adjustment by noting that approximately 1400 square feet of the residence's basement was finished "just like living area" with "two bedrooms, a family room, a bathroom, [and] it walks out to the back." Tr. p. 30. Miller, while stopping short of saying that Swalls failed to take into account the fact that the basement was finished,

testified that Swalls's adjustment for the basement reflected that "his interpretation of the contributory value of a finished basement is not the same as mine." Tr. p. 35. As for Steiner, she testified that she did an exterior-only inspection of the residence, and while she looked into some of the windows, she was unable to look into the basement. In the end, Miller testified that, in addition to his in-person inspection of the residence, he consulted "public records and MLS data, talked to market participants. The normal scope of work that you would do in any appraisal." Tr. p. 24. Husbands points to many other reasons why we should reject Swalls's appraisal in favor of one of the lower ones. The trial court, however, was in the best position to evaluate the expertise and credibility of the witnesses and evaluate their documentary submissions, and the trial court chose to accept Miller's assessment. Husband's argument in this regard is nothing more than an invitation to reweigh the evidence, which we will not do. *See DeHaan*, 572 N.E.2d 1315, 1320.

## B. Husband's Heavy Equipment

Husband also contends that the trial court abused its discretion in valuing several items of heavy equipment that were ultimately assigned to him. Wife commissioned an appraisal by Swalls of all of the parties' personal property, while Husband had certain pieces of heavy equipment appraised by David Hayes of Hayes Auctioneering, Wright Implement, and Jim Maier of Diamond Equipment. The various appraisals of the items at issue are summarized below:

| Item | Swalls | Hayes | Wright | Maier |
|------|--------|-------|--------|-------|

| | | | | |
|---|---|---|---|---|
| John Deere tractor | $9500 | $4900 | $5259 | $5500 |
| King Kutter finish mower | $900 | $450 | $500 | $500 |
| Eighteen-foot trailer | $1200 | $800 | | $800 |
| Homemade Ford bed trailer | $125 | $25 | | |
| Case backhoe | $8500 | $2500 | $2500 | $3500 |
| Cub Cadet mower | $750 | $225 | $150 | $500 |
| Gehl skid steer loader | $8000 | $2500 | $2500 | $2500 |
| Ford tractor | $1000 | $300 | $500 | $500 |
| John Deere five-foot blade | $125 | $125 | $250 | |

[17] As laid out previously, the trial court summarized the results of the various appraisals of Husband's heavy equipment as follows:

> a.  Wife commissioned the appraisal by Johnny Swalls of all household goods and furnishings, tools, equipment and heavy machinery. The value of such property as determined by Swalls was $48,331.50. Swalls appraised the heavy equipment at $30,100.
>
> b.  Husband commissioned three other appraisals of some part or all of his heavy equipment, only. The value of some part or all of the heavy equipment determined by Husband's appraisers were:
>
> David Hayes:           $11,825
>
> Jim Maier ("Diamond")   $13,800
>
> Wright Implement        $11,659

Appellant's App. pp. 21-22. The trial court determined the final value for each piece of heavy equipment by accepting the average values of the two to four appraisals that were made for each item at issue, as submitted by Wife:

| Item | Average appraised value |
| --- | --- |
| John Deere tractor | $6753[2] |
| King Kutter finish mower | $633[3] |
| Eighteen-foot trailer | $800 |
| Homemade Ford bed trailer | $75 |
| Case backhoe | $4250 |
| Cub Cadet mower | $406 |
| Gehl skid steer loader | $3875 |
| Ford tractor | $575 |
| John Deere five-foot blade | $167 |

[18] Husband's argument is essentially that Swalls's appraisal of his heavy equipment in particular—and all of the parties' personal property in general—should be discounted entirely because Swalls's appraisals of his heavy equipment were substantially higher than those of Hayes, Maier, and Wright Implement. Husband, however, points to no flaws in Swalls's methodology, no

---

[2] The average of the four appraisals for the John Deere tractor is actually $6289.75.

[3] The average of the four appraisals for the King Kutter finish mower is actually $587.50.

reason to question his qualifications or objectivity, or any other reason to reject his appraisal, for that matter. As with Husband's previous argument, this argument is nothing more than an invitation to reweigh the evidence, which we will not do. *See DeHaan*, 572 N.E.2d 1315, 1320. Husband has failed to establish that the trial court's valuation of his heavy equipment constitutes an abuse of discretion.

# Conclusion

We conclude that the trial court did not abuse its discretion in deviating from the presumption of an equal division of the marital estate and, in effect, excluding Wife's interest in the Farm from the marital estate. We conclude, however, that the trial court abused its discretion in effectively excluding the Account from the marital estate. Finally, we conclude that the trial court did not abuse its discretion in valuing the marital residence or Husband's heavy equipment. We affirm in part, reverse in part, and remand for recalculation of the final distribution of the marital estate, including the Account, which was valued at $3540 at the time of separation.

The judgment of the trial court is affirmed in part and reversed in part, and we remand with instructions.

Vaidik, C.J., and Kirsch, J., concur.