FILED

Apr 22 2020, 9:03 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEYS FOR APPELLANT

Geoffrey M. Grodner
Kendra G. Gjerdingen
D. Michael Allen
Daniel A. Dixon
Mallor Grodner LLP
Bloomington, Indiana

ATTORNEYS FOR APPELLEES

David J. Bodle
Anthony S. Ridolfo
Steven T. Henke
Hackman Hulett LLP
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

HLH Consulting, LLC,

*Appellant-Plaintiff,*

v.

Burd Automotive, Inc.,
CB Holdings, LLC, and
Christine E. Tanner
f/k/a Christine E. Burd,

*Appellees-Defendants,*

April 22, 2020

Court of Appeals Case No.
19A-PL-1261

Appeal from the Marion Superior
Court

The Honorable James B. Osborn,
Judge

Trial Court Cause No.
49D14-1510-PL-34350

**Robb, Judge.**

# Case Summary and Issue

HLH Consulting, LLC appeals the trial court's order granting summary judgment in favor Burd Automotive, Inc., CB Holdings, LLC, and Christine Burd Tanner (collectively "Defendants") and presents two issues for our review that we consolidate and restate as whether the trial court properly granted summary judgment in favor of the Defendants. Concluding no genuine issue of material fact exists and Defendants were entitled to judgment as a matter of law, we affirm.

# Facts and Procedural History

The following persons, entities, and property are involved in this litigation:

- Burd Ford is an automobile dealership, not a legal entity, an authorized dealer of Ford motor vehicles, and at all times relevant to this case, was located at 10320 Pendleton Pike in Indianapolis, Indiana.

- Burd Automotive, Inc. ("Burd Automotive") is a now dissolved corporation that owned the personal property and assets of Burd Ford and ran the day to day operations of the dealership.

- CB Holdings, LLC ("CB Holdings") is a limited liability company that owns the real property located at 10320 Pendleton Pike upon which Burd Ford was located.

- Christine Burd Tanner ("Christine") is the sole member of CB Holdings and sole shareholder of Burd Automotive.

- HLH Consulting, LLC ("HLH") is a limited liability company located in Indianapolis that provides consulting services, including the marketing of motor vehicle dealerships and related assets.

- Harold Hurst is a licensed real estate salesperson and president of HLH Consulting, LLC.

[3] In 2009, Christine assumed all her late husband's assets, and became the sole member of CB Holdings and the sole shareholder of Burd Automotive. Christine wanted to sell the dealership and obtained Hurst's number from another dealer as someone who could help her identify a buyer. On July 18, 2011, Christine and Hurst met and signed two letter agreements: one agreement in which they agreed HLH would "solicit buyers and arrange for the sale of your auto related dealerships by an asset or stock sale" ("Asset Retention Agreement") and another letter agreement in which they agreed HLH would "obtain a lease or sale of the real estate owned personally by you or your company and used in the operation of your auto related businesses" ("Real Estate Retention Agreement") (collectively, the "Retention Agreement(s)"). Appellant's Appendix, Volume 3 at 96-97. Hurst signed on behalf of HLH. Christine signed on behalf of Burd Ford and herself, "represent[ing] and warrant[ing] [she is] authorized to sign this on behalf of [her] companies." *Id.* As part of each agreement, HLH was given the exclusive right to perform under

the contract for 180 days; HLH charged a five percent fee for facilitating each transaction to be paid in cash at closing but later agreed to lower its fee to four percent.

[4] Through HLH's efforts, Jeff Wyler Automotive Family, Inc. ("Wyler"), an Ohio corporation, offered to purchase Burd Ford. Wyler and Burd Automotive executed a term sheet on April 12, 2012 outlining the terms and conditions of the proposed purchase of substantially all of Burd Ford's assets by Wyler. On May 10, 2012, Wyler, Burd Automotive, and Christine (as shareholder) entered into an agreement in which Wyler agreed to purchase the dealership's assets ("Asset Purchase Agreement").[1] The Asset Purchase Agreement was contingent upon the execution of a lease agreement pursuant to which Wyler was to lease the real estate upon which Burd Ford is located from CB Holdings. Appellee's Appendix, Volume 2 at 122.[2] As part of the agreement, Wyler was authorized to pay four percent of the purchase price to HLH. The Asset Purchase Agreement also provided for the execution of a Consulting Agreement between the parties. The agreement was scheduled to close between June 15 and July 31, 2012. However, before the closing, Ford exercised its

---

[1] Christine signed on behalf of Burd Automotive as president and shareholder. *See* Appellee's Appendix, Volume 2 at 150.

[2] The Real Estate Lease section of the Asset Purchase Agreement stated: "At the Closing and as a condition to Closing, Purchaser [Wyler] shall agree to lease and purchase the real estate upon which the Dealership is located from CB Holdings, LLC pursuant to the Agreement of Lease attached hereto as Exhibit 6 (the "Lease Agreement")." *Id.*

right of first refusal with respect to the proposed sale[3] and entered into a similar asset, lease, and consulting agreement with Burd Automotive, CB Holdings, and Christine, which closed on July 10, 2012. In connection with the closing, Burd Automotive, CB Holdings, or Christine paid HLH $68,025.25 in commission for the asset sale. After the closing, Burd Automotive, CB Holdings, or Christine paid HLH $1,440 every month for its commission on the lease agreement. At some point in 2014 or 2015, Christine stopped making payments to HLH.

[5] On October 12, 2015, HLH filed a Complaint against Burd Automotive, CB Holdings, and Christine (collectively "Defendants") alleging two counts of breach of contract relating to the two Retention Agreements and one count of unjust enrichment. *See* Appellee's App., Vol. 2 at 2-9. Defendants subsequently filed a Motion to Dismiss alleging the Retention Agreement(s) are void and unenforceable because HLH failed to allege in its Complaint that it was a licensed real estate broker as required by statute. On January 11, 2016, the trial court issued an order granting the motion and dismissing the complaint with leave to file an amended complaint within ten days.

[6] Four days later, HLH filed an Amended Complaint, in which it alleged that Hurst was a licensed real estate salesperson acting as an agent for Glazier

---

[3] At his deposition, Lante Earnest, Burd Automotive's attorney, explained Ford's right of first refusal: "Basically they have the right to come in and buy the same assets according to the same terms and conditions that have been previously negotiated." Appellant's App., Vol. 5 at 36.

Realty Group, Inc. ("Glazier Realty"), a licensed real estate broker company, and attached a copy of Hurst's application for licensure, real estate salesperson license issued on April 5, 2010, and real estate broker license issued on April 24, 2014 (Exhibits C and D). *See id.* at 96-104, 107-09. Defendants again filed a Motion to Dismiss alleging that neither Hurst nor Glazier Realty were parties to the Retention Agreements, their licenses are irrelevant, and as such, HLH's Amended Complaint failed to allege a claim upon which relief can be granted. Following a hearing, the trial court granted the motion. On May 12, 2016, HLH filed its Second Amended Complaint again alleging breach of contract and unjust enrichment but also alleging that in 2012 Hurst informed Christine he was a licensed real estate salesperson working for Glazier Realty and Christine knew and agreed to Hurst acting as the real estate salesperson under the Retention Agreements.

[7] Defendants filed their answer asserting affirmative defenses and a counterclaim seeking the return of all commission paid to HLH. On June 12, 2016, Defendants filed their Motion for Summary Judgment arguing that HLH negotiated a transaction for the lease or sale of real estate as a business broker without a real estate broker's license, which violated the Indiana Broker Licensing Act and rendered the Retention Agreements void. In turn, Defendants argued HLH must return any commissions previously received. Appellant's App., Vol. 2 at 145. In support of their motion, Defendants designated certain evidence, including: (1) the Retention Agreements; (2) documentation of Hurst's real estate license; and (3) official statements from the

Indiana Real Estate Commission, Professional Licensing Agency certifying that there was no record of a real estate broker license for Hurst or HLH in 2011. *Id.* at 202; Vol. 3 at 21.

[8] The trial court held a hearing on the motion for summary judgment and granted Defendants' motion on all issues in the Second Amended Complaint and Defendants' Counterclaim, finding, in relevant part:

> Under the Second Amended Complaint, relief is not available under any set of circumstances. The Retention Agreement at issue in the Amended Complaint is a void agreement, and not capable of ratification. Under the Retention Agreement, [HLH] seeks to recover commissions as a business broker in transactions involving the sale and lease of real estate. [HLH] was not a licensed real estate broker under Indiana Code § 25-34.1-1-1, *et seq.*, (2011) in effect at the time and HLH cannot recover commissions as alleged in the Amended Complaint.
>
> [CB Holdings] is not a party to the Retention Agreement at issue in the Second Amended Complaint. [Christine] did not own any of the property subject to the Retention Agreement at issue.
>
> The controlling Indiana statute requires that in all actions for the collection of a real estate commission, a plaintiff must allege and prove that at the time the cause of action arose, the plaintiff was not in violation of the Indiana Real Estate Brokers Act. Ind. Code § 23-34.1-6-2 (b) (2011). [HLH] cannot meet its burden [and] has not alleged that it was duly licensed under Indiana Code § 25-34[.]1-1-1[.] The Retention Agreements at issue in the Second Amended Complaint are considered to constitute a single agreement, executed at the same time, between the same parties, and involving the same subject matter. The Retention Agreement involves the negotiation and sale and lease of real

estate as well as personal property. HLH . . . was not allowed to collect a commission in negotiating the Retention Agreement. The Retention Agreement is void as against the public policy of the State of Indiana, because [HLH] was not licensed as a salesperson or broker under Ind. Code § 25-34.1-3-2 (2011). The undisputed facts establish that HLH . . . did not have a license as a real estate broker as required[.] No real estate broker was a party to the Retention Agreement; making the agreement void.

Under Ind. Code § 25-34.1-6-2 (2011), HLH . . . is not entitled to any commissions from the sale or lease of real estate, or from the sale of personal property, and any commissions previously paid are subject to forfeiture. As a matter of law, the defenses of unjust enrichment and estoppel are not available for [HLH] to assert against Defendants because the Retention Agreement is void *ab initio*. [HLH] failed to allege and cannot prove that it was a properly licensed real estate broker when the Retention Agreement [was executed.] Where a statute makes a contract void for lack of a licensed real estate broker, a court cannot enforce such a void contract. Additionally, the Retention Agreement negotiated by HLH . . . never closed between the parties to the agreement.

The Court being duly advised, it is . . . ORDERED, that the Defendants' Motion for Summary Judgment is GRANTED because the undisputed facts establish that as a matter of law, the Second Amended Complaint fails to state claims against Defendants upon which relief can be granted. Summary Judgment is entered in favor of Defendants and against [HLH]. HLH . . . is not entitled to recover any additional commissions, and all commission previously received by HLH . . . must be forfeited and returned under the Retention Agreement. The Counterclaim filed by Defendants for the recovery of commissions previously paid by Defendants to [HLH] shall be scheduled for trial as on the amount of damages owed by [HLH] for the collection of commissions[.]

Appealed Order at 1-3.[4]

# Discussion and Decision

## I. Standard of Review

Summary judgment is a tool which allows a trial court to dispose of cases where only legal issues exist. *Hughley v. State*, 15 N.E.3d 1000, 1003 (Ind. 2014). When reviewing the grant of summary judgment, we apply the same test as the trial court: summary judgment is appropriate only if the designated evidence shows there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C); *Sedam v. 2JR Pizza Enters., LLC*, 84 N.E.3d 1174, 1176 (Ind. 2017). The moving party bears the initial burden of showing the absence of any genuine issue of material fact as to a determinative issue. *Hughley*, 15 N.E.3d at 1003.

Once the movant for summary judgment has established that no genuine issue of material fact exists, the nonmovant may not rest on its pleadings but must set forth specific facts which show the existence of a genuine issue for trial. *Perkins v. Fillio*, 119 N.E.3d 1106, 1110 (Ind. Ct. App. 2019). "A fact is 'material' if its resolution would affect the outcome of the case, and an issue is 'genuine' if a trier of fact is required to resolve the parties' differing accounts of the truth, or if

---

[4] Following a damages hearing on May 6, 2019, the trial court entered an order awarding Defendants $115,275.25, together with $52,760 in accrued interest. *See* Appellant's App., Vol. 2 at 5.

the undisputed material facts support conflicting reasonable inferences." *Hughley*, 15 N.E.3d at 1003. As opposed to the federal standard which permits the moving party to merely show the party carrying the burden of proof lacks evidence on a necessary element, Indiana law requires the moving party to "affirmatively negate an opponent's claim." *Id.* (quotation omitted). Our review is limited to the evidence designated to the trial court, T.R. 56(H), and we construe all facts and reasonable inferences drawn from those facts in favor of the non-moving party, *Meredith v. Pence*, 984 N.E.2d 1213, 1218 (Ind. 2013). On appeal, the non-moving party carries the burden of persuading us the grant of summary judgment was erroneous. *Hughley*, 15 N.E.3d at 1003.

[11] Here, the parties do not dispute the relevant facts. Instead, the parties disagree as to the effect of those facts: whether the Retention Agreement(s) represent one contract under the Contemporaneous Document Doctrine, whether the Retention Agreement(s) are void under the Indiana Broker Licensing Act, and whether HLH is entitled to damages under the theory of unjust enrichment. Cases involving contract interpretation generally are particularly appropriate for summary judgment. *Celadon Trucking Servs., Inc. v. Wilmoth*, 70 N.E.3d 833, 842 (Ind. Ct. App. 2017), *trans. denied*. And statutory interpretation presents a pure question of law for which summary judgment is also particularly appropriate. *Ramirez v. Wilson*, 901 N.E.2d 1, 2 (Ind. Ct. App. 2009), *trans. denied*. Where the issue presented on appeal is a pure question of law, we review the matter de novo. *Id.*

## II. Retention Agreement(s)

### A. Contemporaneous Document Doctrine

[12] In granting summary judgment in favor of the Defendants, the trial court construed the Real Estate Retention Agreement and Asset Retention Agreement as a single agreement which was rendered void under the Indiana Broker Licensing Act. HLH argues that the Retention Agreements are two *separate* contracts, and although it concedes the Real Estate Retention Agreement is void, HLH contends it can still recover under the Asset Retention Agreement.[5]

[13] The contemporaneous document doctrine provides that "[i]n the absence of anything to indicate a contrary intention, writings executed at the same time and relating to the same transaction will be construed together in determining the contract.'" *Lily, Inc. v. Silco, LLC*, 997 N.E.2d 1055, 1068 (Ind. Ct. App. 2013), *trans. denied*. In addition to being executed at the same time, the writings must relate 'to the same transaction or subject-matter' to be construed together as a contract." *Estate of Spry v. Greg & Ken, Inc.*, 749 N.E.2d 1269, 1274 (Ind. Ct.

---

[5] HLH makes the following concession in its brief:

> HLH concedes that the Real Estate Retention Agreement is of no force and effect under Indiana's contract law. Either no contract formed because CB Holdings – the owner of the Pendleton Pike Property – was not a party to the Real Estate Retention Agreement, or, if a contract formed, it was void because HLH was not a licensed real estate broker as required by Indiana Code, section 25-34.1-6-2 (2011). If a contract formed as to the Real Estate Retention Agreement and the two retention agreements are construed together as one contract, then both contracts would be void.

Appellant's Brief at 15 (emphasis omitted).

App. 2001). Application of this doctrine is determined on a case-by-case basis, and the doctrine should be applied cautiously when the documents involve different parties. *Lily, Inc.*, 997 N.E.2d at 1068.

[14] Under the contemporaneous document doctrine, HLH contends that the two Retention Agreements are "not intertwined or related to one another and they cannot be construed as one contract" because the Asset Retention Agreement was executed for the purpose of selling the dealership's assets and the Real Estate Retention Agreement was executed for the purpose of obtaining a lease or sale of the real estate. Appellant's Brief at 13. Further, HLH argues that CB Holdings was not a party to the Retention Agreements and "[n]owhere in either of the retention agreements is there a statement that one agreement is dependent or conditioned upon the other." *Id.*

[15] Here, the undisputed designated evidence reveals that Hurst and Christine met on July 18, 2011 and executed the Asset Retention Agreement and the Real Estate Retention Agreement at the same time, between the same parties,[6] and relating to the same subject matter, namely the negotiation and sale of the

---

[6] HLH argues that CB Holdings was not a party to the Retention Agreements. Here, Christine executed the Retention Agreement on behalf of Burd Ford and herself representing and warranting that she was authorized to sign the document on behalf of her *companies*. *See* Appellant's App., Vol. 3 at 96-97. Because Christine was the sole shareholder and sole member of the companies that owned the assets and real estate involved in the Retention Agreement, she and her companies were parties to the Retention Agreement. *Care Grp. Heart Hosp., LLC v. Sawyer,* 93 N.E.3d 745, 754 (Ind. 2018) (when a litigant is not a party to a contract, the "critical inquiry is whether the litigant who is absent from the cast of parties to one of the agreements is nevertheless 'the same in essential respects' to a party to that agreement"). Furthermore, in its Second Amended Complaint, HLH asserted that Christine executed the Retention Agreement on behalf of the Defendants. Appellant's App., Vol. 2 at 29, ¶ 19.

dealership's personal property/assets and the real estate upon which the dealership was located. When Christine met with Hurst, she believed they were going to talk about obtaining a buyer, and at her deposition, she stated: "And what I mean by that, I mean buy everything, the whole, so I could be out completely. That's what I thought we were going to be talking about." Appellant's App., Vol. 3 at 228.

[16] She further testified as to her understanding of the two documents: "[Hurst] was going to bring a buyer to me, and then I don't know what the buyer was going to offer. So . . . to me, it was all one document. Because if he brought somebody to me that didn't want the real estate or wanted [to] just buy the franchise. I didn't know at the time. So I look at this as one document." *Id.* at 223. She further stated, "I just think it's all one entity. I mean, I would never sell just the land if the dealership wasn't sold." *Id.* at 224. Under these circumstances, we agree with the trial court's interpretation that the Asset Retention Agreement and Real Estate Retention Agreement constitute a single agreement.

## B. Indiana Broker Licensing Act

[17] The trial court concluded that the single Retention Agreement was void *ab initio* under the Indiana Broker Licensing Act because HLH was not a licensed real estate broker at the time it entered into the Retention Agreement. Under the Indiana Broker Licensing Act in effect at the time the Retention Agreement was signed, a person who performs the acts of a salesperson without a salesperson license or performs the acts of a broker without a broker license, commits a

Class A infraction.  Ind. Code § 25-34.1-6-2(a) (2010).  The penalty for a conviction for this offense is that "the court shall add to any fine imposed the amount of any fee or other compensation earned in the commission of the offense."  *Id.*  With respect to a suit to recover commission, the statute provides:

> In all actions for the collection of a fee or other compensation for performing acts regulated by this article, it must be alleged and proved that, at the time the cause of action arose, the party seeking relief was not in violation of this section.

Ind. Code § 25-34.1-6-2(b) (2010).[7]  The purpose of the Act is to "protect [Indiana] citizens from possible loss at the hands of incompetent or unscrupulous persons acting as brokers[,]" and to "effectuate the purpose of the Act it has been provided that only licensed persons may perform any acts as real estate brokers and criminal penalties are imposed . . . upon those who violate this provision."  *Hoffman v. Dunn*, 496 N.E.2d 818, 822 (Ind. Ct. App. 1986) (quotation omitted).  Therefore, "[a]llegation and proof of compliance with Indiana's licensing statute [is] a substantive statutory element of [plaintiff]'s suit for collection of a commission."  *Rose Acre Farms, Inc. v. Greemann Real Estate*, 516 N.E.2d 1095, 1097 (Ind. Ct. App. 1987), *trans. denied*.

---

[7] "Person" is defined as an individual, a partnership, a corporation, or a limited liability company.  Ind. Code § 25-34.1-1-2(1) (2006).  "Broker" "means a person who, for consideration, sells, buys, trades, exchanges, options, leases, rents, manages, lists, or appraises real estate or negotiates or offers to perform any of those acts."  *Id.* at (4).  "Salesperson" "means an individual, other than a broker, who, for consideration and in association with and under the auspices of a broker, sells, buys, trades, exchanges, options, leases, rents, manages, or lists real estate or negotiates or offers to perform any of those acts."  *Id.* at (5).

[18] Here, the Retention Agreement involved the sale or lease of the real estate upon which the dealership was located and therefore, pursuant to statute, HLH was required to have a real estate broker license. There is no dispute that HLH did not allege or prove its compliance with the statute and was in violation of the statute as it did not have the requisite license when it entered into the Retention Agreement and cannot recover commission. *See* Appellant's App., Vol. 2 at 202; *Id.*, Vol. 3 at 21. Therefore, the Retention Agreement purporting to entitle HLH to a certain percent of commission which it is prohibited from receiving is void. *See Hoffman*, 496 N.E.2d at 822-23 (stating that a "contract made in violation of a statute is generally presumed void" and holding real estate contract void and unenforceable where no party to the contract held a real estate broker's license). Accordingly, the trial court properly granted summary judgment in favor of Defendants on this issue.

## C. Unjust Enrichment

[19] Nonetheless, contrary to the trial court's conclusion, HLH argues that even if the Retention Agreement is void, Indiana law permits equitable relief for void contracts. *See* Appellant's Br. at 15. In its order, the trial court concluded:

> The Retention Agreement is void as against the public policy of the State of Indiana, because [HLH] was not licensed as a salesperson or broker[.]
>
> * * *
>
> As a matter of law, the defenses of unjust enrichment and estoppel are not available for [HLH] to assert against Defendants

> because the Retention Agreement is void *ab initio*. [HLH] failed
> to allege and cannot prove that it was a properly licensed real
> estate broker when the Retention Agreement [was executed].
> When a statute makes a contract void for lack of a licensed real
> estate broker, a court cannot enforce such a void contract.
> Additionally, the Retention Agreement negotiated by HLH . . .
> never closed between the parties to the agreement.

Appealed Order 2-3.

[20] HLH asserts it is legally entitled to equitable relief under the theory of unjust enrichment. Unjust enrichment requires a party who has been unjustly enriched at another's expense to make restitution to the aggrieved party. *Neibert v. Perdomo*, 54 N.E.3d 1046, 1051 (Ind. Ct. App. 2016). To recover, the plaintiff must show that (1) he rendered a measurable benefit to the defendant at the defendant's express or implied request; (2) he expected payment from the defendant; and (3) allowing the defendant to retain the benefit without restitution would be unjust. *Id.* And although there is a strong presumption of the validity of contracts, courts have refused to enforce contracts on public policy grounds in three types of situations: (1) agreements that contravene a statute; (2) agreements that clearly tend to injure the public in some way; (3) agreements that are otherwise contrary to the declared policy of Indiana. *Ahuja v. Lynch Ltd. Med. Research*, 675 N.E.2d 704, 707 (Ind. Ct. App. 1996), *trans. denied*.

[21] Here, there is no question that the Retention Agreement violates the Indiana Broker Licensing Act and is void against public policy, and that HLH is not

entitled to the commission it sought in its Second Amended Complaint and forfeits any previously earned commission. In light of the statute's language requiring forfeiture of commission, contracts made in violation of the statute are not subject to equitable relief. Further, HLH's argument that it is entitled to equitable relief is illogical and contrary to the purpose of the Act. Even assuming *arguendo* that the void contract was subject to equitable relief, HLH would not be entitled to relief because the deal with Wyler never closed and therefore, HLH did not confer any measurable benefit on Defendants. Therefore, we conclude that judgment as a matter of law was appropriate.

[22] In sum, the Retention Agreement violated Indiana law and is void and unenforceable as against public policy; therefore, HLH must forfeit any commission Defendants already paid and is not entitled to equitable relief. Because no genuine issue of material fact exists and Defendants are entitled to judgment as a matter of law, the trial court properly granted Defendants' motion for summary judgment.

# Conclusion

[23] There are no genuine issues of material fact and Defendants are entitled to judgment as a matter of law. The trial court properly granted summary judgment in favor of Defendants. Accordingly, we affirm.

[24] Affirmed.

Bradford, C.J., and Altice, J., concur.